United States District Court
Southern District of Texas
**ENTERED**
September 23, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KARL A. HODSON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-453 |
| | § | |
| CANDACE MOORE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER DISMISSING CASE

This civil rights action was filed by a Texas state prisoner, Karl Anthony Hodson, pursuant to 42 U.S.C. § 1983.  In addition, Plaintiff's father, Karl J. Hodson, joined as a plaintiff in this lawsuit.[1]  The case involves Inmate Hodson receiving prison discipline for filing false or fraudulent liens against prison personnel.  Plaintiffs raise a variety of claims relating to the prison discipline, investigation, and treatment of Plaintiffs in connection with these matters.  Plaintiffs are appearing *pro se*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.  As such, Inmate Hodson's action is subject to screening regardless of whether he prepays the entire filing fee or proceeds as a pauper.  *Ruiz v.*

---

[1] Prisoner Karl Anthony Hodson will be referred to herein as "Inmate Hodson," while his father will be referred to as "Father Hodson."  Together, both Hodsons will be referred to as "Plaintiffs."  The Court allowed Father Hodson to join in this lawsuit because (1) Plaintiffs paid the $400 filing fee, and (2) Father Hodson purports to raise his own constitutional violations arising from the actions of Defendants.

*United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999).  Inmate Hodson's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Similarly, the Court is duty bound to examine the basis of its subject matter jurisdiction.  *Lane v. Halliburton,* 529 F.3d 548, 565 (5th Cir. 2008) (citing *Union Planters v. Bank Nat'l Ass'n v. Salih,* 369 F.3d 457, 460 (5th Cir. 2004).  Subject matter jurisdiction may be raised by a court *sua sponte*.  *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583-84 (1999).  In fact, at any level of the proceedings, a federal court has an independent duty to examine whether it has subject matter jurisdiction over the case.  *See id.* at 583 ("[S]ubject matter delineations must be policed by the courts on their own initiative even at the highest level.").  Furthermore, before a federal court can consider the merits of a claim, it must be satisfied that it has subject matter jurisdiction over the action.  *Id.*

Applying these standards, Inmate Hodson's claims challenging his disciplinary hearing, claiming he was denied equal protection of the law, denied access to the courts, retaliated against, and that Defendants' actions violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) are hereby dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  Further, Father Hodson's claims, that he was denied information under the Freedom of Information Act (FOIA) and discriminated against because Ms. Moore believed him to be a "Sovereign Citizen," and any other derivative claims he asserts via his son are dismissed for

lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6), of the Federal Rules of Civil Procedure.

## I.      JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.  Upon consent of the parties (D.E. 66, 68, 69), this case was re-assigned to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment.  (D.E. 70).  *See* 28 U.S.C. § 636(c).

## II.     BACKGROUND PROCEEDINGS AND PLAINTIFFS ALLEGATIONS.

Inmate Hodson is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined at the McConnell Unit (MCU) in Beeville, Texas.  He is serving a life sentence with no possibility of parole for a capital murder conviction out of Kendall County, Texas.  Father Hodson lives in Lakehills, Texas, which is located in the Western District of Texas.

In this lawsuit, Inmate Hodson is challenging a disciplinary hearing that was held at the MCU, Disciplinary Case No. 20150229962.   In that disciplinary case, defendant Candace Moore charged Plaintiff with filing false liens against TDCJ personnel.  (*See*, D.E. 53-2, p. 4, Copy of April 14, 2015 Offense Report).  On April 20, 2015, Captain Gonzales conducted a disciplinary hearing and found Inmate Hodson guilty as charged.[2]  (*See* D.E.

---

[2] For over the last ten (10) years, the TDCJ-CID has been addressing the problems caused by inmates filing fraudulent financial liens with the Secretary of State's office against TDCJ employees.  (*See* D.E. 28-5, pp.9-11).   Inmates found guilty of engaging in this activity are subject to disciplinary charges that may lead to the loss of good time credits, as well as a transfer to less-favorable housing, and the loss of other privileges.  In addition, inmates are subject to felony charges under Texas state law.  *See* Texas Penal Code § 37.101.

53-2, p. 3, copy of TDCJ Disciplinary Report and Hearing Record).   The disciplinary conviction has not been vacated, set aside, or otherwise overturned.

On October 16, 2015, Plaintiffs filed their original complaint in the United States District Court for the Western District of Texas, San Antonio Division, against Candace Moore and Captain J.C. Gonzales.  (D.E. 1).  United States District Judge Xavier Rodriguez transferred the case to this Court, but ordered Plaintiffs to explain under what authority Father Hodson had to represent Inmate Hodson's interests or had any claims of his own, and noted that the claims raised in the original complaint appeared frivolous.  (D.E. 2).

On November 30, 2015, Plaintiffs filed a 34-page amended complaint, (D.E. 12), and on December 7, 2015, filed a second amended complaint.  (D.E. 16).

On December 8, 2015, a *Spears*[3] hearing was conducted.

The following allegations were made in Plaintiffs' second amended complaint (D.E. 16), or at the hearing:

Prior to his arrival at the MCU, Inmate Hodson was confined at the Hughes Unit (HU) in Gatesville, Texas.  Inmate Hodson received a disciplinary case from Kenneth Putnam, who was an HU officer at the time but is now a warden at the MCU.  Inmate Hodson challenged the disciplinary case served by Putnam and it was reversed at Step 2 of the appeal process.  Putnam was reassigned to the MCU, and Father Hodson began writing to Ms. Moore trying to obtain information about Warden Putnam, purportedly under the FOIA.  Ms. Moore refused to produce records regarding Warden Putnam to Father Hodson. (D.E. 16, ¶¶ 16-18).

---

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

On April 14, 2015, Ms. Moore, along with two law library officers, Officer Jacaway and Officer Martinez, searched Inmate Hodson's cell.  Inmate Hodson questioned why his cell was being searched, and Ms. Moore responded that one of Inmate Hodson's relatives had identified himself as a "Sovereign Citizen" and the search was being conducted to determine if Inmate Hodson possessed documentation identifying himself as such.[4]  (D.E. 16, ¶¶ 19-25).

Inmate Hodson left his cell while the search continued.  Later that day, he was served with a disciplinary case for filing or causing to be presented for filing false financial statements with intent to defraud another.  (D.E. 16, ¶¶ 28-31).       On April 15, 2015, Donna Bryant was appointed as Counsel Substitute (CS) to represent Inmate Hodson at his disciplinary hearing.  (D.E. 16, ¶ 36).

On April 20, 2015, Plaintiff had a disciplinary hearing at which Captain Gonzales presided as the disciplinary hearing officer (DHO).  (D.E. 16, ¶ 38).  Ms. Moore testified at the hearing that it was her belief that Father Hodson was directing Inmate Hodson on how to file liens against TDCJ officers.  (D.E. 16, ¶ 46).  Captain Gonzales found Inmate Hodson guilty, and as punishment, he lost 180 days good time; his contact visits were suspended for 3 months; and he lost 45 days recreation, commissary, personal property, and access to the phone.  (D.E. 16, ¶ 47).

On April 22, 2015, Inmate Hodson went before a Unit Classification Committee. He was reassigned to disciplinary segregation, closed custody.  (D.E. 16, ¶ 51).

---

[4] The sovereign citizen movement is a loose group of American and Canadian litigants, commentators, tax protesters and financial-scheme promoters.  *See https://www.splcenter.org/fighting-hate/intelligence-report/2015/what-sovereign-citizen (*visited 09/06/16).

Inmate Hodson testified that, prior to the events forming the basis of this lawsuit, his custody classification was S-3.  He was allowed out of his cell from 7:00 a.m. to 10:30 p.m. He was permitted to work, go to the dayroom, and attend recreation and religious services. He could talk on the phone and have four contact visits a month.  He took his meals in the dining facility and could visit the law library.  In discipline segregation, closed custody, Inmate Hodson has none of these privileges.  Inmate Hodson claims that the forms seized by Ms. Moore were simply blank forms that can be used to file security interests under the Uniform Commercial Code (U.C.C.), and that he never presented the documents for filing.

Following the *Spears* hearing, on January 13, 2016, the Court ordered Defendants to file a *Martinez*[5] report regarding the documents seized on April 14, 2015.  (D.E. 29).

On February 10, 2016, Defendants filed the *Martinez* report, with portions under seal. (D.E. 53).

Plaintiffs are suing Candace Moore and Captain Gonzales in their official and individual capacities for money damages.  Inmate Hodson claims that Defendants committed the following constitutional violations:

> (1) failure to provide equal protection of the law (D.E. 16, §§ 58-60);
> (2) illegal search and seizure (D.E. 16, §§ 61-66);
> (3) denial of access to the courts (D.E. 16, §§ 68-72);
> (4) retaliation (D.E. 16, §§ 73-79);
> (5) violation of *Wolff* due process protections at the disciplinary hearing (D.E. 16, §§ 80-83);
> (6) false disciplinary charges (D.E. 16, §§ 84-93);
> (7) due process violations by spoliation (D.E. 16, §§ 94-109);
> (8) failure to follow TDCJ rules and regulations (D.E. 16, §§ 110-118);

---

[5] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *Cay v. Estelle*, 789 F.2d 318, 323 n. 4 (5th Cir. 1986). *See also Cay v. Estelle*, 789 F.2d 318, 323 n. 4 (5th Cir. 1986) (Fifth Circuit approved of the use of Martinez Reports in order to develop the factual basis of inmate claims).

(9) RLUIPA violations (D.E. 16, §§ 119-129);

(10) unconstitutional conditions of confinement (D.E. 16, §§ 130-137); and

(11) violations of Texas state law.

Father Hodson appears to allege the same claims on behalf of his son, and in addition, is suing Defendants claiming that they discriminated against him based on their alleged belief that he was a member of the Sovereign Citizens and as such, refused to give him documents that he requested under the FOIA and then seized documents from his son.

## III.   PENDING MOTIONS AND LEGAL STANDARD.

Defendants have moved to dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure (D.E. 17), and have also filed a partial motion for summary judgment to dismiss some of Inmate Hodson's claims for failure to exhaust administrative remedies.  (D.E. 42).  However, with regard to inmate Hodson, the Court need not evaluate his claims within the confines of Defendants' motions as both 28 U.S.C. §1915(e)(2) and §1915A require dismissal at any time the Court determines that a prisoner's action is frivolous or malicious or fails to state a claim upon which relief can be granted. Further, regarding both plaintiffs, Rule 12(b)(1) and 12(b)(6) permit the Court to dismiss the action *sua sponte* if it lacks subject matter jurisdiction over a claim or the pleadings, taken as true, fail to state a cognizable constitutional violation.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state

law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth,* 55 F.3d 160, 162 (5th Cir. 1995).  An action may be dismissed for failure to state a claim when it is clear that the plaintiff can prove no set of facts in support of his claim entitling him to relief.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the *pro se* plaintiff and the truth of all pleaded facts must be assumed.  *Id.*

## IV.   DISCUSSION.

### A.   Eleventh Amendment immunity and official capacity claims.

Plaintiffs are suing Defendants in their official and individual capacities.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Inmate Hodson or Father Hodson is suing Candace Moore and/or Captain Gonzales in their official capacities for money damages, those claims are barred by

the Eleventh Amendment, and as such, they are dismissed with prejudice as barred by the Eleventh Amendment.

### B.    Inmate Hodson's claims.

#### 1.    Equal protection claim.

Inmate Hodson claims that Defendants deprived him of the equal protection of the law because Ms. Moore suspected that Father Hodson was a "Sovereign Citizen" and then openly discriminated against Plaintiff Hodson and caused illegal charges to be filed against him and an illegal search to be conducted of his cell.

The Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons similarly situated be treated alike. *See Stefanoff v. Hays County,* 154 F.3d 523, 525-26 (5th Cir. 1998) (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)). A state actor violates the Equal Protection Clause when he or she treats one set of persons differently from others who are similarly situated. *See Yates v. Stadler,* 217 F.3d 332, 334 (5th Cir. 2000) (citing *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999)).

To establish an equal protection claim, a plaintiff must allege (1) that the defendant created two or more classifications of similarly situated prisoners that were treated differently, and (2) that the classification had no rational relation to any legitimate governmental objective. *See Stefanoff,* 154 F.3d at 526 (citing *Johnson v. Rodriguez,* 110 F.3d 299, 306-07 (5th Cir. 1997), *cert. denied*, 522 U.S. 995 (1997)). In deciding whether similarly situated individuals have been treated differently, the court examines "whether the plaintiffs are similarly situated to another group for purposes of the challenged government action." *Yates,* 217 F.3d at 334.

Accepting Inmate Hodson's allegations as true, he fails to establish how Defendants treated him differently from other similarly situated inmates. Indeed, all inmates are subject to cell searches, and all inmates are subject to seizure of any and all documents that contain or relate to U.C.C. filings. (*See* D.E. 24, Frank Hoke Memorandum directing all TDCJ mailroom staff "not to allow any Uniform Commercial Code (UCC) documentation into a TDCJ facility"). The Hoke Memorandum, offered by Plaintiffs, provides further:

> Should you or staff find that an offender is in possession of any printed material that references Uniform Commercial Code (UCC) or describes how someone can "copy right" their name, that material should be confiscated immediately and an I-210 disciplinary offense report written for possession of contraband (Level 2, Code 16.C).
>
> In addition, should an offender possess a completed "UCC financial statement" (Form UCC-3) or you find completed copyright notices, common law copyright notices, indemnity agreements, security agreements, private security agreements, etc., it shall be confiscated immediately and an I-210 disciplinary offense report written for an act defined as a felony of the laws of the state of Texas (Penal Code 37.101) or the United States (Level 1, Code 10).

(D.E. 24, p. 12). The fact that Ms. Moore suspected Father Hodson to be a "Sovereign Citizen" based on his earlier correspondence with her gave Ms. Moore cause to search Plaintiff's cell for U.C.C. material. After finding the material, (D.E. 28), Ms. Moore simply followed procedure and charged Inmate Hodson with a disciplinary case. Inmate Hodson fails to offer any evidence to suggest that he was treated differently than similarly situated prisoners, and as such, he fail to state an equal protection violation.

### 2.      Illegal search and seizure.

Inmate Hodson claims that Ms. Moore illegally searched his cell and confiscated legal papers and forms violating his First, Fourth, Sixth and Fourteenth Amendment rights.[6] (D.E. 16, §§ 61-67).   In particular, Inmate Hodson claims that Ms. Moore illegally confiscated 3.5 inches of legal papers, one law book, one religious book with the Star of David, and some photographs.

Inmate Hodson does not have a protected liberty interest in not having his cell or property searched.  *See Hudson v. Palmer,* 468 U.S. 517, 526 (1984) (prisoners have no Fourth Amendment expectation of privacy in their cells).

In *Hudson,* Chief Justice Burger, writing for the majority, discussed cell searches:

We hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment prescription against unreasonable searches does not apply within the confines of a prison cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Id.,* at 526.  *Hudson* precludes any Fourth Amendment claim by Inmate Hodson.

Inmate Hodson also complains his Fourteenth Amendment rights have been denied by the refusal to return the stacks of legal documents that were seized.  In *Hudson,* the Court held an unauthorized intentional deprivation of property by a state employee does not constitute a violation to the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.

---

[6] Inmate Hodson does not explain how his First and Sixth Amendment rights are implicated in this specific alleged violation.  Accordingly, because he has failed to set out the necessary elements for these particular claims, they are dismissed as a matter of law.

For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy. *Hudson,* 468 U.S. at 533; *Marshall v. Norwood,* 741 F.2d 761 (5th Cir. 1984). In *Lewis v. Woods,* 848 F.2d 649, 652 (5th Cir. 1988), the Fifth Circuit held that the state could afford an inmate due process by providing a post-deprivation remedy for the redress of an unforeseeable, unauthorized injury. *See id.* at 652 (dismissing without prejudice for failure to state a constitutional violation inmate's claim that prison officials took his radio and amplifier from the cell of his fellow inmate and did not return it). Texas courts have acknowledged that the prison grievance system is one post-deprivation remedy. *See e.g. Pedraza v. Tibbs,* 826 S.W.2d 695 (Tex. App. – Houston [1st Dist.] 1992, writ dism'd w.o.j.).

In addition, Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss,* 568 S.W.2d 413, 420-21 (Tex. Civ. App.—San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). State law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

Because Texas law provides an adequate post-deprivation remedy, Inmate Hodson's loss of his personal property does not state a claim under the Due Process Clause. *See Hudson,* 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally

destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy).

A prisoner-plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983). The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers*, 709 F.3d at 94. Inmate Hodson testified that he has not filed suit in state court pursuant to § 501.007 or for conversion. Because Inmate Hodson has not pursued his state court remedies he cannot allege that the post-deprivation remedy available to him is inadequate. As such, Inmate Hodson's claim for property loss fails to state a cognizable constitutional claim, and it is dismissed with prejudice.

### 3.    Denial of access to the courts.

In the second amended complaint, Inmate Hodson argues that the seizure of the legal materials from his cell by Ms. Moore constituted a denial of access to the courts. (D.E. 16, §§ 68-72). Inmate Hodson claims that these documents were seized because Ms. Moore believed Father Hodson to be a "Sovereign Citizen," and she was attempting to prevent him from filing a lawsuit against Warden Putnam, in violation of his right of access to the courts. Inmate Hodson alleges that, as a consequence of Defendants refusal to return the legal papers:

> [Inmate Hodson] is frustrated and impeded and now in danger of missing filing deadlines, having to re-do all of his prep work on the claims and the same goes for tort claims, does not have his paid for legal notes & book, does not have his legal forms, and is dealing with constant interference with his rights to Access to the Courts.

(D.E. 16, § 72).

Access to the courts is a fundamental constitutional right placing certain obligations on the part of prison and jail officials to assist inmates in realizing that right. *Bounds v. Smith,* 430 U.S. 817, 828 (1977).  However, actual injury must be shown to establish a *Bounds* claim. *See Lewis v. Casey,* 518 U.S. 343 (1996); *Mann v. Smith,* 796 F.2d 79, 84 (5th Cir. 1986).  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement). Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999).  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819.  In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356.  He must show "that his position as a litigant

was prejudiced" as a direct result of the denial of access.  *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Here, Inmate Hodson has made only conclusory statements that the seizure of his "legal work" has delayed him in filing a lawsuit against Warden Putnam concerning events that occurred at the HU.  Moreover, a review of the seized documents reveals that these documents are exactly the type of material that the TDCJ has mandated be seized and not returned to prisoners.  (*See* D.E. 28, Ex. A, Confiscated Contraband Financial Documents). The documents instruct Inmate Hodson on how to become a Secured Creditor and he is advised to get in touch with "Sovereign Filing Solutions" for assistance.  (D.E. 28-3, p. 4). With these instructions, Inmate Hodson has caused to be served upon both Ms. Moore and Captain Gonzales "proofs of claim" that purport to overturn his disciplinary conviction if Defendants fail to respond to his correspondence within three days and to place a lien on Defendants' real and personal property.  (D.E. 28-6, pp. 9-14).   Inmate Hodson had previously filed U.C.C. paperwork in 2012.  (D.E. 53, p. 4).

The Attorney General characterizes the filing of fraudulent liens by prisoners against TDCJ employees as "financial terrorism," and notes that it has proven to be an extremely effective and inexpensive way for offenders to accomplish several simultaneous goals: "1) to intimidate or coerce public officials; 2) to serve as damaging instruments of revenge against public individuals; and 3) to slow down or clog up the judicial system."  (D.E. 28-5. p. 62).  In response to prisoners filing false liens, the TDCJ adopted a no tolerance policy and inmates are not permitted to have U.C.C. filing forms, blank or completed, in their

possession, and to do so is in violation of TDCJ rules and regulations, as well as state law. (D.E. 28-5, pp. 6-8).

In this case, the seized documents show that both Inmate Hodson and Father Hodson filed documents to become "sovereign citizens" and that Inmate Hodson filed fraudulent liens against Ms. Moore and Captain Gonzales.  (*See* D.E. 28-5, pp 12-27).  To the extent Inmate Hodson claims he was prevented from filing a lawsuit against Warden Putnam, he offers no facts or dates, and the fact that he was able to correspond with his father about becoming a sovereign citizen and to file liens against Ms. Moore and Captain Gonzales demonstrates that he was not denied access to the courts.  This claim is without merit and is dismissed with prejudice.

### 4.    Retaliation.

Inmate Hodson argues that Defendants Moore and Gonzales retaliated against him by concocting false charges, depriving him of legal papers and evidence in a separate legal matter involving Warden Putnam, and depriving him of a fair hearing in retaliation for Inmate Hodson's prior grievances and his father's supposed status as a "Sovereign Citizen." (D.E. 16, ¶¶ 73-79).

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972).  Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).  It is well-settled that a prison official may not retaliate against or harass an

inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 Fed. Appx. 386, *1 (5th Cir. Jul. 12, 2010) (unpublished)(citing *Wood*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

Taking as true Inmate Hodson's allegations, he fails to state a claim of retaliation against Ms. Moore or Captain Gonzales. The uncontested evidence shows that Inmate Hodson's cell was searched and illegal documents were found, such that he was charged with possessing contraband. (D.E. 53-2, p. 4). Inmate Hodson claimed that Ms. Moore was

alerted to the fact that he might possess such illegal documents because his father had written to her and had indicated "Sovereign Citizen" association by placing his zip code in brackets.  (D.E. 16, § 74).  Inmate Hodson states that he had filed grievances against Ms. Moore and Captain Gonzales prior to the search, but he offers no dates or grievance numbers.  After the search of his cell, Inmate Hodson filed the fraudulent lien paperwork against Ms. Moore and Captain Gonzales.  (*See* D.E. 28-5, pp. 21-27).  In addition, *after* his cell was searched, Inmate Hodson's filed grievances against Moore and Gonzales.  (*See* D.E. 42-1, pp. 3-41).  There is no chronology of events showing that Defendants responded to any particular action of Inmate Hodson.  His dispute with Moore and Gonzales did not arise until after the April 14, 2015 search of his cell.  This does not support a chronology of events from which retaliation can be inferred.  The mere fact that Inmate Hodson's cell was searched as a consequence of his father's correspondence does not demonstrate retaliation for Inmate Hodson exercising a constitutional right.  Thus, Inmate Hodson's retaliation claim is dismissed with prejudice.

### 5.    Denial of *Wolff* due process protections.

Inmate Hodson's main complaint in this lawsuit is that he was served with a disciplinary case for filing false liens and was found guilty of those charges, and as a consequence thereof, he lost good time credits, privileges, and his classification was reduced such that he has less freedoms within the prison.  Plaintiff argues that the disciplinary hearing was invalid because he was not afforded the due process protections required by *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974) (due process mandates notice and an opportunity to present contrary evidence).  However, Inmate Hodson cannot seek § 1983

damages for an allegedly unconstitutional conviction unless or until he has had the disciplinary conviction set aside or vacated. *Edwards v. Balisok,* 520 U.S. 641, 645-647 (1997). Inmate Hodson admitted that he did not appeal his disciplinary conviction, nor did he file a state or federal writ of habeas corpus. Plaintiff cannot challenge the disciplinary conviction proceeding in this § 1983 action because, were he to prevail, it would in theory entitle him to a speedier release such that this claim must be brought in a habeas corpus proceeding. Accordingly, his claims that he was denied *Wolff* protections are not cognizable in this proceeding, and are dismissed for failure to state a claim.

### 6.     False allegations.

Inmate Hodson is suing Ms. Moore and Captain Gonzales in their individual capacities for money damages claiming that he was denied due process because he was charged with a false disciplinary case and then wrongfully punished. Inmate Hodson maintains that the seized paperwork was blank and did not reflect that it had ever been presented for filing.

First, Inmate Hodson fails to state a cognizable § 1983 claim based on his allegation that the disciplinary case filed against him was false. *Castellano v. Fragozo,* 352 F.3d 939, 945 (5th Cir. 2003). Moreover, his claim that he lost certain prison privileges such as recreation, commissary, and telephone, does not invoke due process protections because the loss of these privileges do not affect the fact or duration of Plaintiff's sentence. *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995).

More importantly, as noted above, Inmate Hodson cannot maintain a claim for § 1983 damages unless or until the challenged disciplinary conviction has been set aside or

vacated on appeal or in a habeas corpus proceeding. *Heck v. Humphrey*, 512 U.S. 477, 498 (1994). In *Heck,* the Supreme Court held that "in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentences has been [overturned]." *Heck,* 512 U.S. at 486-87. The Fifth Circuit has explained that "[i]t is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted....'" *Bush v. Strain,* 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck,* 512 U.S. at 486-87). The *Heck* doctrine also operates to bar prisoners from challenging the punishment imposed by a disciplinary proceeding through a § 1983 action. *See Edwards,* 520 U.S. at 648 ("[plaintiff's] claim for declaratory relief and money damages, based on allegations … that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder,* 154 F.3d 186, 189-91 (5th Cir 1998) (*en banc*) (applying *Heck* to bar plaintiff's constitutional claims that were fundamentally intertwined with his request for restoration of good time credits). Inmate Hodson's disciplinary case has not been overturned and his claims against Ms. Moore and Captain Gonzales are directly related to the disciplinary case. Inmate Hodson's claims against Defendants concerning his disciplinary conviction and the punishments he received are barred by *Heck* and are, therefore, dismissed.

### 7.     Spoliation.

Inmate Hodson claims that he was denied due process by spoliation of the disciplinary record. This claim, however, consists of Inmate's Hodson's objections to the manner in which Captain Gonzales conducted the disciplinary hearing. Again, under *Heck,* these claims must be pursued in a habeas corpus proceeding, and they are accordingly dismissed with prejudice.

### 8.     TDCJ Rules and regulations.

Inmate Hodson complains throughout his second amended complaint that Defendants failed to follow TDCJ's rules, policies and procedures resulting in a violation of his due process rights. The failure of TDCJ officials to follow their own regulations was addressed in *Hernandez v. Estelle,* 788 F.2d 1154 (5th Cir. 1986). In *Hernandez,* an inmate initiated a § 1983 suit after TDCJ officials failed to comply with a 48 hour notice requirement when withholding a publication. The court found no constitutional violation and concluded that complete and adequate due process procedures provided after the notice was given was constitutionally adequate. *Id.* at 1158. In part, *Hernandez* relied on the previous opinion of *Vodicka v. Phelps,* 624 F.2d 569 (5th Cir. 1980), wherein "this Court clearly implied that a violation of the regulation on notification would not automatically entitle a prisoner to § 1983 relief." *Hernandez,* 788 F.2d at 1158.

Similarly, in *Samford v. Dretke,* 562 F.3d 674, 681 (5th Cir. 2009), the inmate challenged the enforcement of the prison's "negative mail list" that excluded mail to and from the inmate to his minor sons. Samford also argued that the TDCJ failed to follow its own procedures arguing that TDCJ policy prohibited including children on a parent-

inmate's negative mail list and that rejected mail must be returned to the inmate.  562 F.3d at 681.  The Court rejected those arguments noting that the prison's failure to follow its own policies is not sufficient to state a civil rights claim.  *Id.  See also Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process if constitutional minima are nevertheless met).

To the extent Inmate Hodson contends that Defendants failed to follow the various TDCJ rules, policies and procedures, those allegations fail to state a cognizable constitutional violation.  As such, these claims must be dismissed for failure to state a claim and/or as frivolous.

### 9.      RLUIPA violations.

Inmate Hodson alleges that his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) were violated because Defendant Moore allegedly asked the unit chaplain what faith preference he claimed to be.  (D.E.16, §§ 119-129).  Inmate Hodson claims that Ms. Moore's inquiry as to his faith preference is a "clear sign of discrimination and violation of RLUIPA."  (D.E. 16, § 122).  He also claims that Ms. Moore targeted Messianic Jews in regards to fraudulent lien disciplinary cases.  *Id.*

With respect to its protection of institutionalized persons, the RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (A)  is in furtherance of a compelling governmental interest; and

(B)   is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  The Act broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A).  Under the RLUIPA, the plaintiff bears the burden to prove that the challenged law, regulation or practice substantially burdens his exercise of religion.  Once a plaintiff has made this *prima facie* showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest.  *Id.,* § 2000cc-2(b).  *And see Sossamon v. Texas,* 131 S. Ct. 1651 (2011).

The RLUIPA is a prohibition against *government* regulation, law or policy.  Here, however, Inmate Hodson is challenging the actions of one individual, Ms. Moore, in seizing his property and failing to return it.  Inmate Hodson does not claim that the search of his cell placed a substantial burden on his religious exercise.  He is complaining about the confiscation of his personal property, some of which just happens to be religious.  Ms. Moore was not acting pursuant to a TDCJ religious policy, and the fact that some property was of a religious nature does not convert Inmate Hodson's claim into a RLUIPA or First Amendment claim.  Accordingly, Inmate Hodson fails to state a RLUIPA violation or First Amendment, and therefore these allegations are dismissed with prejudice.

## 10.   Unconstitutional conditions of confinement.

Inmate Hudson claims that, after being found guilty of possession of contraband, he went before a Unit Classification Committee and was further punished because he was

assigned to disciplinary housing, which is stricter than his previous classification and devoid of privileges such as recreation, telephone, visitation, and commissary.

As discussed previously, Inmate Hodson's challenges to his disciplinary conviction must be brought in a habeas corpus proceeding.  Moreover, to the extent he complains about the loss of privileges, he does not state a due process claim because due process protections are generally limited to freedom from restraints that impose atypical and significant hardships in relation to the ordinary incidents of prison life. *Sandin,* 515 U.S. at 484.

To the extent Inmate Hodson is attempting to claim that loss of privileges equals an Eighth Amendment violation, he fails to establish that the change in his classification and the resulting conditions are so harsh as to constitute cruel and unusual punishment that shocks the conscience under contemporary standards. *See Rhodes v. Chapman,* 452 U.S. 337, 345-48 (1981) (Eighth Amendment prohibits conditions that involve the unnecessary and wanton infliction of pain).  Nowhere did Inmate Hodson allege that his current living conditions cause him unnecessary pain or suffering.  There is no Eighth Amendment violation.  Therefore, Inmate Hodson's conditions of claims are dismissed with prejudice.

### 11.    Violations of Texas state law.

Inmate Hodson is suing Defendants for allegedly violating the Texas Penal Code under the following sections: (1) § 37.10, tampering with governmental records; (2) § 39.02, abuse of official capacity; (3) § 39.03, official oppression; (4) § 39.04, violation of the civil rights of a person in custody; and (5) § 7.02, criminal responsibility for the conduct of another.  (D.E. 16, §§ 138-154).  However, the Texas Penal Code does not create a private cause of action. *Aguilar v. Chastain,* 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ,

ref'd).  In *Aguilar,* the TDCJ plaintiff sued a guard under §§ 39.01, 39.02, and 39.03 of the Texas Penal Code complaining that the officer had abused his official capacity and violated the plaintiff's constitutional rights of a person in custody.  *Aguilar,* 923 S.W.2d at 745.  The Tyler Court of Appeals held that "the Penal Code does not create private causes of action, and a victim does not have standing to participate in a criminal proceeding." *Id.*  Thus, Inmate Hodson's claims under the Texas Penal Code are without merit and accordingly, are dismissed with prejudice.

### C.     Father Hodson's claims.

Father Hodson's claims that the injuries to his son amount to constitutional violations to him.  He claims that he was denied equal protection when Ms. Moore refused to produce documents under the FOIA, that he was denied access to the courts, even though he is not a prisoner, and that Ms. Moore took a book from Inmate Hodson that belongs to him.

Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims.  *Stockman v. Fed. Election Comm'n,*  138 F.3d 144. 151 (5th Cir. 1998).   A plaintiff has no standing if he cannot allege a "personal stake in the outcome" far above those of the public "which would sharpen the issues for the Court." *Baker v. Carr,* 369 U.S. 186, 204 (1962).  Moreover, one individual has no standing to litigate the § 1983 claims of another.  *Warth v. Smith,* 422 U.S. 490, 509-520 (1975).

As to Father Hodson's claims against Defendants in their official capacities, those claims are barred by the Eleventh Amendment such that the Court lacks subject matter jurisdiction over those claims.  *See e.g. Ross v. Tex. Educ. Agency,* 409 Fed. Appx. 765, 768 (5th Cir. 2011) (per curiam) ("We review Eleventh Amendment sovereign immunity

determinations, as we do other questions of subject matter jurisdiction, as a question of law *de novo*").  Father Hodson has no constitutional right to the production of documents under the Freedom of Information Act, 5 U.S.C. § 522 *et seq*.  The FOIA has no application to state governments or their agencies.  *Davidson v. State of Georgia,* 622 F.2d 895, 897 (5th Cir. 1980).  Father Hodson's remaining claim, that he was discriminated against because he was believed to be a "Sovereign Citizen" fails to state a cognizable constitutional violation because he is not a prisoner and he alleges no facts to show that he was treated differently than any other inmate-parent who had filed liens against TDCJ personnel.  To the extent Father Hodson attempts to exert the same claims as his son via his son, they are equally without merit, and are therefore dismissed with prejudice.

## V.    CONCLUSION.

The documents in the *Martinez* report demonstrate that, while at the Hughes Unit, Inmate Hodson prepared and filed false U.C.C. paperwork in 2012, and again, while at the MCU, prepared and filed false liens against and served notice of such on Ms. Moore and Captain Gonzales.  Inmate Hodson's cell was searched on April 14, 2015 and financial documents, U.C.C. filing instructions, sovereign citizen instructions, and other documents considered contraband by the TDCJ were seized from Inmate Hodson and he was charged with a disciplinary case by Ms. Moore.  A disciplinary hearing was held on April 20, 2015 at which Inmate Hodson was represented by counsel substitute, and he was found guilty as charged.  Neither Ms. Moore nor Captain Gonzales sat on the Unit Classification Committee that downgraded Inmate Hodson's custody level based on his disciplinary conviction.

Inmate Hodson has not had the disciplinary conviction set aside, and until he does so, his claims challenging that conviction are barred by *Heck*.  Inmate Hodson's remaining claims against Ms. Moore and Captain Gonzales fail to state cognizable constitutional claims and/or are frivolous, and are therefore dismissed with prejudice pursuant to 28 U.S.C. § § 1915(e)(2) and 1915A(b)(1).

Father Hodson's alleged derivative claims fail to state cognizable constitutional claims and they are properly dismissed with prejudice for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

It is further ordered that, as to Inmate Karl Anthony Hodson, TDCJ ID No. 01617855, this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that a PDF version of this recommendation and Order adopting it be sent via email to Lori Stover at Lori Stover/TXED/05/USCOURTS.

Accordingly, this action is **DISMISSED** and all pending motions are denied as moot.

ORDERED this 23rd day of September, 2016.

Jason B. Libby
United States Magistrate Judge